ALLAN S. BLOOM
STEPHEN P. SONNENBERG
KELSEY G. VAN WART
PAUL HASTINGS LLP
75 East 55th Street
New York, New York 10022
(212) 318-6000

*Attorneys for Defendant*
HSBC BANK USA, N.A.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOHN CRUZ,

                Plaintiff,

- against -

HSBC BANK USA, N.A.,

                Defendant.

No. 12 Civ. 06088 (LDW) (ARL)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

Page

I. FACTS ........................................................................................................................... 1

II. COUNT I SHOULD BE DISMISSED BECAUSE CRUZ WAS AN AT-WILL EMPLOYEE AND BECAUSE NO CONTRACT EXISTED THAT LIMITS HSBC'S RIGHT TO TERMINATE HIS EMPLOYMENT ............................................. 2

III. COUNT II MUST BE DISMISSED FOR THE SAME REASONS AS COUNT I; NO OBLIGATION NOT TO DISCHARGE CAN BE INFERRED HERE ..................... 5

IV. COUNT III MUST BE DISMISSED BECAUSE NEW YORK DOES NOT RECOGNIZE A CAUSE OF ACTION FOR THE "TORT OF RETALIATORY DISCHARGE" ................................................................................................................ 7

V. COUNT IV MUST BE DISMISSED BECAUSE NEW YORK DOES NOT RECOGNIZE A CAUSE OF ACTION FOR THE "TORT OF UNLAWFUL COERCIVE CONDUCT" .............................................................................................. 8

VI. COUNT V MUST BE DISMISSED BECAUSE IT IS BARRED BY THE STATUTE OF LIMITATIONS AND, EVEN IF IT WAS NOT, CRUZ FAILS TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UNDER NEW YORK LAW ........................................................................ 9

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ......................................................................................................... 2

*Atkinson v. Mobil Oil Corp.,*
  205 A.D.2d 719 (2d Dep't 1994) ..................................................................................... 3

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ......................................................................................................... 2

*Canstar v. J.A. Jones Constr. Co.,*
  212 A.D.2d 452 (1st Dep't 1995) ..................................................................................... 7

*Chambers v. Time Warner, Inc.,*
  282 F.3d 147 (2d Cir. 2002) ............................................................................................. 1

*Harris v. Provident Life & Accident Ins. Co.,*
  310 F.3d 73 (2d Cir. 2002) ............................................................................................... 7

*Haviland v. J. Aron & Co.,*
  212 A.D.2d 439 (1st Dep't 1995) ..................................................................................... 5

*Horn v. New York Times,*
  100 N.Y.2d 85 (2003) ............................................................................................... 3, 5, 6

*Howell v. New York Post Co.,*
  81 N.Y.2d 115 (1993) ..................................................................................................... 10

*Ingle v. Glamore Motor Sales, Inc.,*
  73 N.Y.2d 183 (1989) ................................................................................................. 8, 10

*Leibowitz v. Bank Leumi Trust Co.,*
  152 A.D.2d 169 (2d Dep't 1989) ................................................................................... 10

*Murphy v. Am. Home Prods. Corp.,*
  58 N.Y.2d 293 (1983) .............................................................................................. passim

*Russo-Lubrano v. Brooklyn Fed. Sav. Bank,*
  2007 U.S. Dist. LEXIS 2646 (E.D.N.Y. Jan. 12, 2007) ........................................... 10, 11

*Sabetay v. Sterling Drug, Inc.,*
  69 N.Y.2d 329 (1987) ............................................................................................... 2, 3, 4

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*Sullivan v. Harnisch*,
    19 N.Y.3d 259 (2012) .............................................................................................5

*Thompson v. Bosswick*,
    855 F. Supp. 2d 67 (S.D.N.Y. 2012) .......................................................................6

*Valley Cadillac Corp. v. Dick*,
    238 A.D.2d 894 (4th Dep't 1997) ...........................................................................3

*Wieder v. Skala*,
    80 N.Y.2d 628 (1992) ....................................................................................4, 5, 8

*Wilson v. Erra*,
    94 A.D.3d 756 (2d Dep't 2012) ...............................................................................9

*Wolff v. Rare Medium, Inc.*,
    210 F. Supp. 2d 490 (S.D.N.Y. 2002), *aff'd*, 65 F. App'x 736 (2d Cir. 2003) .........3

**STATUTES**

N.Y. C.P.L.R. § 215(3) .....................................................................................................9

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(b)(6) .....................................................................1, 2

Defendant HSBC Bank USA, N.A. ("HSBC") respectfully submits this memorandum of law in support of its motion to dismiss the First Amended Complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(6). None of Plaintiff's five claims in this diversity action states a cause of action under New York law.

## I. **FACTS**

HSBC hired Cruz in January 2008 as a Branch Relationship Manager ("BRM"). (*See* First Amended Complaint ("FAC") [Docket No. 4] ¶¶ 6, 9.) In early 2009, after working for approximately one year in an HSBC branch in Carle Place, Cruz transferred to Suffolk County, where he worked as a BRM assigned to a cluster of branches, including one in East Northport. (*See* FAC ¶ 16.)

More than one year before Cruz had any responsibility in or for the East Northport branch, HSBC began investigating certain fraudulent activity in the branch with respect to several accounts referred to HSBC by a particular Certified Public Accountant. (*See* FAC ¶ 33 & Ex. A.[1]) That investigation began in December 2008, when the fraudulent activity was brought to HSBC's attention by another employee—not Cruz. The investigation was well in progress when Cruz transferred to the East Northport branch. (*See* FAC ¶ 33 & Ex. A.)

In 2009, Cruz's performance was unsatisfactory and HSBC notified Cruz that his performance needed to improve, including in his 2009 mid-year performance evaluation. (*See* FAC ¶¶ 35, 39 & Ex. D.) Rather than address his performance issues, Cruz began a campaign of making unsubstantiated allegations that he had "uncovered" additional fraud in the East Northport branch, that his notary stamp had been stolen, and that he had been "threatened" by a

---

[1] All exhibits cited in this memorandum are attached to and/or referred to in the First Amended Complaint, and therefore may properly be considered on a motion to dismiss. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (on motion to dismiss court may consider pleadings as well as all documents incorporated therein by reference).

customer. (*See* FAC ¶ 40 & Ex. E.) When HSBC management, security, and human resources professionals attempted to investigate Cruz's concerns, however, Cruz failed to provide specifics, making an investigation of his various complaints difficult. (*See id.*)

Apparently consumed with reporting (and taking credit for reporting) what he perceived was fraudulent activity, Cruz continued to fail to meet satisfactory job performance levels and was coached and issued a series of written performance warnings. HSBC ultimately terminated Cruz's employment for multiple reasons, including continued unsatisfactory performance, disruptive behavior, and violation of company policy. (FAC ¶ 44.) Each reason was entirely legitimate.

Cruz sued HSBC in this Court to challenge his termination. His First Amended Complaint, asserting diversity jurisdiction (*see* FAC ¶ 1), contains five claims under New York law: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) "tort of retaliatory discharge"; (4) "tort of unlawful coercive conduct"; and (5) "tort of infliction of emotional distress." Each should be dismissed under Rule 12(b)(6) for failure to state a claim.

## II.  COUNT I SHOULD BE DISMISSED BECAUSE CRUZ WAS AN AT-WILL EMPLOYEE AND BECAUSE NO CONTRACT EXISTED THAT LIMITS HSBC'S RIGHT TO TERMINATE HIS EMPLOYMENT

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Under New York law, it is well established that "absent an agreement establishing a fixed duration [of employment], an employment relationship is presumed to be a hiring at will, terminable at any time by either party." *Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 333 (1987) (citation omitted). As such, an employer may discharge an at-will employee at any time

with or without cause. *See Horn v. New York Times*, 100 N.Y.2d 85, 90-91 (2003). The New York Court of Appeals repeatedly has refused to recognize exceptions to this rule, including in cases where plaintiffs claim to be whistleblowers with respect to alleged fraud or financial impropriety. *See Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 305 (1983) (dismissing, *inter alia*, breach of contract claims of employee who alleged he had been discharged in retaliation for his disclosure of and refusal to participate in $50 million in illegal accounting improprieties, even though the company's internal regulations required the disclosure); *see also Sabetay*, 69 N.Y.2d at 336 (dismissing complaint of employee who claimed he was fired for "blowing the whistle" and refusing to engage in improper and unethical activities; rejecting the employee's argument that the company's written policies requiring employees to report illegal or unethical activities to senior management created an implied agreement not to dismiss an employee for complying with these policies).

In addition, to sustain a breach of contract claim, "a plaintiff must identify the specific provision of the contract that was breached as a result of the acts at issue." *Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 494 (S.D.N.Y. 2002), *aff'd*, 65 F. App'x 736 (2d Cir. 2003); *accord Atkinson v. Mobil Oil Corp.*, 205 A.D.2d 719, 720 (2d Dep't 1994) ("In order to plead a breach of contract cause of action, a complaint must allege the provisions of the contract upon which the claim is based[.]") (citation omitted); *Valley Cadillac Corp. v. Dick*, 238 A.D.2d 894, 894 (4th Dep't 1997) ("'A complaint for breach of contract must allege the provisions of the contract upon which the claim is based.' . . . It must 'set forth the terms of the agreement upon which liability is predicated, either by express reference or by attaching a copy of the contract[.]'") (citations omitted).

Here, Cruz asserts the very claim that was rejected by the Court of Appeals in

*Murphy* and in *Sabetay*. Without pointing to any contract providing for employment of a certain duration, Cruz argues that HSBC breached his "employment agreement" because it discharged him in alleged retaliation for complying with "reporting requirements" imposed on all HSBC employees. (FAC ¶¶ 53-55.) The "contract" that Cruz refers to is an HSBC policy, entitled the "AML Initiative," which, together with a certificate of compliance that HSBC requires employees to sign (the "Compliance Certificate"), contain reporting requirements for employees who become aware of illegal activity or "suspicious activity." (*See* FAC ¶¶ 48-52.)

But as the New York State Court of Appeals made clear in *Murphy* and *Sabetay*, written policies requiring employees to report illegal or unethical activities do *not* create an exception to the at-will doctrine or an implied agreement not to dismiss an employee for complying with these policies. *See Murphy*, 58 N.Y.2d at 305 (rejecting claim for breach of contract in connection with discharge where company's internal regulations required plaintiff to report accounting improprieties and plaintiff alleged he was fired for making such disclosure); *Sabetay*, 69 N.Y.2d at 336 (affirming dismissal of breach of contract claims predicated on company policies requiring disclosure of unethical and illegal activities).

Indeed, New York has recognized only one extremely narrow exception to the rule announced in *Murphy*, which applies to attorneys and has no application here. *See Wieder v. Skala*, 80 N.Y.2d 628, 637-38 (1992).[2] The Court of Appeals has steadfastly refused to extend

---

[2] Specifically, in *Wieder*, an attorney claimed that he was dismissed by his law firm "because of his insistence that the firm comply with the governing disciplinary rules by reporting professional misconduct[.]" *Wieder*, 80 N.Y.2d at 631. The Court of Appeals found that the attorney stated a valid claim for breach of contract based on the implied-in-law obligation that "plaintiff and the firm would comply with the governing [professional responsibility] rules[.]" *Id.* at 638. In reaching this conclusion, the Court of Appeals stressed that, unlike the plaintiffs in *Murphy* and *Sabetay*—employees of financial institutions—the attorney's provision of legal services to his firm's clients "as a duly admitted member of the Bar was at the very core and, indeed, the only purpose of his association with [the law firm]. . . . Practically speaking,

- 4 -

its limited holding in *Wieder* to contexts outside the legal profession—specifically including the financial whistleblower context. *See Sullivan v. Harnisch*, 19 N.Y.3d 259, 264 (2012) (refusing to extend the *Wieder* exception to a hedge fund compliance officer who alleged that he had been terminated for confronting the company's CEO and president about his personal sales of stock); *Horn*, 100 N.Y.2d at 96-97 (holding that plaintiff-physician, who claimed that she was terminated in retaliation for refusing to violate her patient-confidentiality obligations, failed to state a claim for breach of contract within the narrow exception to the at-will employment rule created in *Wieder*).

Cruz's implied allegations that HSBC's various compliance and reporting policies somehow trump New York's at-will employment doctrine are without legal basis. Although Cruz quotes various provisions of the Compliance Certificate and AML Initiative imposing reporting requirements on all HSBC employees, these reporting requirements simply do not impose a contractual obligation on HSBC. *See Haviland v. J. Aron & Co.*, 212 A.D.2d 439, 440 (1st Dep't 1995) ("A contract does not arise simply because an employer requires an employee to abide by certain rules as a condition of his retention.").

Because Cruz does not point to a single contractual provision that expressly limits HSBC's right to terminate him, Count I must be dismissed.

### III. COUNT II MUST BE DISMISSED FOR THE SAME REASONS AS COUNT I; NO OBLIGATION NOT TO DISCHARGE CAN BE INFERRED HERE

In Count II, Cruz alleges that HSBC breached an implied covenant of good faith and fair dealing when it terminated his employment in alleged retaliation for complying with the reporting requirements imposed on all HSBC employees by the Certificate of Compliance and

---

plaintiff's duties and responsibilities as a lawyer and as an associate of the firm were so closely linked as to be incapable of separation." *Id.* at 635.

the AML Initiative. (*See* FAC ¶¶ 58-61.) The New York State Court of Appeals has squarely rejected this claim, however, and has held that an employer's unfettered right to terminate an at-will employee is incompatible with an implied obligation of good faith and fair dealing. *See Murphy*, 58 N.Y.2d at 304-05. As the Court of Appeals explained in *Murphy*,

> In the context of [at-will] employment it would be incongruous to say that an inference may be drawn that the employer impliedly agreed to a provision which would be destructive of his right of termination. The parties may by express agreement limit or restrict the employer's right of discharge, but to imply such a limitation from the existence of an unrestricted right would be internally inconsistent.

*Id.*

Since its decision in *Murphy*, the Court of Appeals repeatedly has refused to recognize claims for breach of an implied covenant of good faith and fair dealing in the termination-of-employment context. As it explained in *Horn*,

> We have consistently declined . . . to recognize a covenant of good faith and fair dealing to imply terms grounded in a conception of public policy into employment contracts, . . . and we again decline to do so. The good and sufficient reasons underlying this forbearance, so eloquently expressed by Judge Jones in *Murphy*, have not changed[.]

100 N.Y.2d at 96-97. *See also Thompson v. Bosswick*, 855 F. Supp. 2d 67, 84 (S.D.N.Y. 2012) ("[W]ell-settled New York law holds that no implied covenant of good faith and fair dealing attaches to at-will employment contracts. The basis for this rule is that an obligation to abide by an implied covenant of good faith and fair dealing would be inconsistent with the employer's unfettered right to terminate an at-will employee.") (citations and quotation marks omitted). Accordingly, because the covenant of good faith and fair dealing cannot be implied in an at-will employment relationship, Count II must be dismissed.

Cruz's Count II should also be dismissed because it is duplicative of his Count I.

Cruz alleges precisely the same conduct and damages to support his breach of contract and breach of the implied covenant claims. (*Compare* FAC ¶¶ 53-56 *with* FAC ¶¶ 59-62.)

A claim alleging breach of the implied covenant should be dismissed as duplicative where it is based on the same facts as the alleged breach of the underlying contract. *See Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002) ("New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled."); *accord Canstar v. J.A. Jones Constr. Co.*, 212 A.D.2d 452, 453 (1st Dep't 1995) (holding that a separate claim for breach of the implied covenant "is redundant since a breach of an implied covenant of good faith and fair dealing is intrinsically tied to the damages allegedly resulting from a breach of the contract").

### IV. COUNT III MUST BE DISMISSED BECAUSE NEW YORK DOES NOT RECOGNIZE A CAUSE OF ACTION FOR THE "TORT OF RETALIATORY DISCHARGE"

Cruz alleges in Count III that HSBC engaged in "tortious retaliatory conduct" when it terminated his employment. (*See* FAC ¶¶ 69-70.) New York does not recognize a tort of retaliatory discharge, however. Indeed, as described above, with one narrow exception applicable only to the legal profession, the New York State Court of Appeals has refused to create a wrongful discharge exception to the employment at will doctrine. *See Murphy*, 58 N.Y.2d at 301 (declining to follow other jurisdictions in adopting the tort-based abusive discharge cause of action for imposing "liability on employers where employees have been discharged for disclosing illegal activities on the part of their employers" because "such a significant change in [New York] law is best left to the Legislature[ ]").

Even when it later created the narrow exception to the at-will doctrine for attorneys nearly ten years after *Murphy*, the Court of Appeals reiterated that there is *still* no

claim in tort arising from the termination of employment. *See Wieder*, 80 N.Y.2d at 638-39 (dismissing plaintiff's tort claim for wrongful discharge, and noting that whether New York law would recognize such a tort was a matter for the legislature to decide).[3]

Because the tort of retaliatory discharge doesn't exist, Cruz's Count III must be dismissed.

## V. COUNT IV MUST BE DISMISSED BECAUSE NEW YORK DOES NOT RECOGNIZE A CAUSE OF ACTION FOR THE "TORT OF UNLAWFUL COERCIVE CONDUCT"

In Count IV, Cruz alleges that HSBC engaged in conduct "designed to coerce him" to violate various federal statutes. (*See* FAC ¶¶ 73-74.) This claim must be dismissed because there is no "tort of unlawful coercive conduct" recognized in New York.

As described above, the New York Court of Appeals has repeatedly refused to recognize a cause of action in tort arising from the discharge of an at-will employee. (*See* Section IV and note 3, above.) Cruz's Count IV is just that—a tort claim duplicative of his other claims, seeking relief based on HSBC's termination of his employment, recast as a "tort of unlawful coercive conduct."[4] That tort simply does not exist in New York common law, and must be dismissed for that reason.

---

[3] *See also Murphy*, 58 N.Y.2d at 303 ("[I]n light of our holding . . . that there is now no cause of action in tort in New York for abusive or wrongful discharge of an at-will employee, plaintiff should not be allowed to evade that conclusion or to subvert the traditional at-will contract rule by casting his cause of action in terms of [a different] tort[.]"); *Ingle v. Glamore Motor Sales, Inc.*, 73 N.Y.2d 183, 189 (1989) (New York courts "decline[ ] to allow the use of substitute nomenclature or causes, such as a prima facie tort or intentional infliction of emotional distress, to bootstrap the threshold deficiency in a wrongful discharge claim") (citations omitted).

[4] Indeed, the damages Cruz seeks for the "tort of unlawful coercive conduct," including "loss of his salary," are identical to the damages he seeks on his other termination-related claims. (*Compare* FAC ¶ 75 *with* FAC ¶¶ 56, 62, & 71.)

- 8 -

## VI. COUNT V MUST BE DISMISSED BECAUSE IT IS BARRED BY THE STATUTE OF LIMITATIONS AND, EVEN IF IT WAS NOT, CRUZ FAILS TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UNDER NEW YORK LAW

Cruz alleges in Count V that HSBC "knowingly and intentionally engaged in extreme and outrageous conduct" that caused him to suffer extreme emotional distress. (*See* FAC ¶¶ 77-79.) This claim is barred by the one-year statute of limitations applicable to intentional infliction of emotional distress ("IIED") claims. *See Wilson v. Erra*, 94 A.D.3d 756, 756 (2d Dep't 2012) (A cause of action for "intentional infliction of emotional distress [is] governed by a one-year statute of limitations[.]") (citing N.Y. C.P.L.R. § 215(3)).

Cruz alleges that HSBC's "extreme and outrageous conduct" began in "mid-July 2009" (*see* FAC ¶ 77) and that the alleged emotional distress he purportedly suffered "for a period of months" took place between September 30, 2009 and February 2, 2010 (FAC ¶¶ 78-79). Cruz first included a claim for IIED in his First Amended Complaint, filed on December 21, 2012. Cruz does not allege any conduct by HSBC that occurred within a year of his filing this lawsuit, a period during which he was no longer employed by HSBC. (*See* FAC ¶ 44 and *generally*.) Accordingly, Cruz's Count V is time barred and must be dismissed.

Even if Cruz's IIED claim was timely (which it is not), it would still fail to state a claim for relief, as New York courts routinely reject attempts by plaintiffs to circumvent an employer's right to discharge an at-will employee by alleging claims sounding in tort—specifically including claims for the intentional infliction of emotional distress. *See, e.g., Murphy*, 58 N.Y.2d at 303 ("[I]n light of our holding . . . that there is now no cause of action in tort in New York for abusive or wrongful discharge of an at-will employee, plaintiff should not be allowed to evade that conclusion or to subvert the traditional at-will contract rule by casting his cause of action in terms of a tort of intentional infliction of emotional distress[.]"); *see also*

*Ingle v. Glamore Motor Sales, Inc.*, 73 N.Y.2d 183, 189 (1989) (New York courts "decline[ ] to allow the use of substitute nomenclature or causes, such as . . . intentional infliction of emotional distress, to bootstrap the threshold deficiency in a wrongful discharge claim") (citations omitted).

In addition, the allegations Cruz includes in support of Count V—even assuming they are true for the purposes of this motion—fall far short of the requisite "extreme and outrageous" conduct necessary to survive a motion to dismiss. *See, e.g., Howell v. New York Post Co.*, 81 N.Y.2d 115, 122 (1993) (affirming dismissal of IIED claim and noting that "'the requirements of [an IIED claim] are rigorous, and difficult to satisfy'"; "[i]ndeed, of the intentional infliction of emotional distress claims considered by this Court, every one has failed because the alleged conduct was not sufficiently outrageous") (citations omitted); *see also, e.g., Leibowitz v. Bank Leumi Trust Co.*, 152 A.D.2d 169, 171-72, 181-82 (2d Dep't 1989) (affirming grant of motion to dismiss; employee who was often called a "Hebe" or a "kike," was ordered to choose between her health or her job when she could not work overtime because she had a doctor's appointment, and was asked to engage in illegal activities, failed to state a claim for IIED); *Russo-Lubrano v. Brooklyn Fed. Sav. Bank*, No. CV-06-0672 (CPS), 2007 U.S. Dist. LEXIS 2646, at *29-30 (E.D.N.Y. Jan. 12, 2007) (dismissing plaintiff's IIED claim because "[t]he alleged conduct here which occurred within the limitations period was termination on the basis of improper motivations, which, though possibly sufficient for an employment discrimination claim, does not rise to the level of outrageousness required for an IIED claim in New York").

> Indeed, as this Court noted in *Russo-Lubrano*,
>
> > Since the alleged conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community, satisfying the outrageousness element is

- 10 -

difficult, even at the pleadings stage.

*Id.* at \*25 (citations and quotation marks omitted). Although Cruz alleges in conclusory fashion that HSBC engaged in "extreme and outrageous" conduct with the intent of forcing him to choose between "maintaining his livelihood" and violating the law, he does not allege any conduct that reasonably can be viewed as "extreme in degree," "go[ing] beyond all possible bounds of decency," "atrocious," or "utterly intolerable in a civilized community." (*See* FAC *generally*.)

Quite to the contrary, the documents that Cruz attaches to his FAC in support of his claims reflect thoughtful, thorough, and responsive actions on the part of HSBC—not the outrageously offensive and shocking behavior required to sustain an IIED claim. (*See, e.g.*, FAC Ex. C (email from HSBC Human Resources representative Maria Malanga advising Cruz that she was "still reviewing the information you provided this week[,]" would "be back in contact with you as quickly as I can[,]" and that she wanted "to ensure that we do a thorough review of all your concerns"); FAC Ex. E (email from Ms. Malanga confirming that HSBC had completed "a full and thorough investigation" of Cruz's complaint and was addressing the fraudulent activity Cruz refers to; assuring Cruz that "if any impact of this fraud is in any way related to accounts in your portfolio, you will not be held accountable"; and requesting that Cruz provide specific details to support his allegations)). Even if Cruz's IIED claim was timely, and permissible in the context of his discharge, it would have to be dismissed for failing to satisfy the basic elements of the claim under New York law.

For the foregoing reasons, HSBC respectfully requests that the Court grant its motion to dismiss Cruz's First Amended Complaint in its entirety with prejudice.

Dated: New York, New York
May 6, 2013

Respectfully submitted,

PAUL HASTINGS LLP

By: _____
Allan S. Bloom
Stephen P. Sonnenberg
Kelsey G. Van Wart

75 East 55th Street
New York, New York 10022
(212) 318-6000

*Attorneys for Defendant*
HSBC BANK USA, N.A.

LEGAL_US_E # 103497345.6