Andrew Grosso
ANDREW GROSSO & ASSOCIATES
Georgetown Place
1101 Thirtieth Street, NW
Suite 300
Washington, D.C. 20007
(202) 298-6500

Nicholas J. Damadeo
NICHOLAS J. DAMADEO, P.C.
27 West Neck Road
Huntington, New York 11743
(631) 271-7400

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

**JOHN CRUZ,**                               )
                                             )
    Plaintiff                           )    CASE NO. 12-cv-06088 (LDW) (ARL)
                                             )
       v.                             )
                                             )
**HSBC BANK USA, N.A.,**                     )
                                             )
    Defendant                           )

## OPPOSITION OF PLAINTIFF JOHN CRUZ TO DEFENDANT'S
## MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

## TABLE OF CONTENTS

I. THE LEGAL STANDARD................................................... 2

II. THE FACTS AS PLEADED................................................. 3

    A. The Employment Agreement......................................... 3

    B. The Discovery by Mr. Cruz of the Illegal Activity.................... 5

III. EACH COUNT PROPERLY STATES A CLAIM FOR RELIEF.......... 8

    A. Counts One and Two: Breach of Contract, and Breach
of the Covenant of Good Faith and Fair Dealing........................... 8

    B. Counts Two and Three: Retaliation and Coercion................. 11

    C. Count Five: Intentional Infliction of Emotional Distress.......... 14

    CONCLUSION............................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*Amron v. Morgan Stanley Inv. Advisors, Inc.*, 464 F.3d 338, 343 (2d Cir. 2006) ............................2

*Bartis v. John Bommarito Oldsmobile-Cadillac, Inc.*, 626 F. Supp. 994, 1000 (E.D. Mo. 2009) ..................................................................................................................................................13

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................2

*Bunker v. Testa*, 234 A.D.2d 1004, 652 N.Y.S.2d 181 (App. Div. 1996) ...................................18

*Candid Prods. V. SFM Media Serv. Corp.*, 381 N.Y.S. 2d 280, 282 (App. Div. 1976) ...............13

*Casissa v. First Republic Bank*, 2010 U.S. Dist. LEXIS 72438, at *5-6 (N.D. Cal. July 19, 2010) ..................................................................................................................................................13

*Cavanaugh v. Watanabe*, 10 Misc. 3d 1043 (Sup. Ct. 2005) .....................................................15

*Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006) ..................................................2

*Doe v. Esposito*, 114 A.D.2d 992, 495 N.Y.S.2d 432 (App. Div. 1985) ......................................18

*Elkins v. Cassarino*, 248 A.D. 2d 35 (2d. Dept. 1998) ...............................................................15

*Emery v. Schneider*, 2009 U.S. Dist. LEXIS 6891, 25-26 (D.S.D. Jan. 30, 2009) .......................13

*Grandonico v. Consortium Communications Intl.*, 566 F. Supp. 1288 (S.D.N.Y. 1983) ..............13

*Harmon v. Teamsters, Chauffeurs & Helpers Local Union 371*, 832 F.2d 976, 980 (7th Cir. 1987) ..................................................................................................................................................16

*Harvey v. Cramer*, 235 A.D.2d 315, 653 N.Y.S.2d 3 (App. Div. 1997) ......................................19

*Horn v. New York Times*, 100 N.Y.2d 85 (2003) ........................................................................12

*Ingle v. Glamore Motor Sales, Inc.*, 73 N.Y.2d 183, 189 (1989) ................................................17

*Int'l Longshoremen's Ass'n v. United States*, 451 F. Supp 685, 687 (S.D. Ala. 1978) .................16

*Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) ...................................................................2

*McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*, 682 N.Y.S.2d 167 (1998) ...................14, 17

*McKinney v. Moore*, 2007 U.S. Dist. LEXIS 29494, at *9 (S.D.N.Y. April 16, 2007) ...............16

*Medley v. SugarHouse HSP Gaming, L.P.*, 2013 U.S. Dist. LEXIS 39201, at *9-10 (E.D. Pa. Mar. 21, 2013) ...............................................................................................................................13

*Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 304-05 (1983) ...................................10

*Nass v. Warehouse Prod. Co.*, 503 F. Supp. 217 (E.D.N.Y. 1980), *aff'd without op.*, 657 F.2d 264 (2d Cir. 1981)............................................................................................................................16

*Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005) ..........................................2

*Owens v. Accuscribe Transcription Servs. LLC*, 2009 U.S. Dist. LEXIS 123550, at *56-57 (D.S.C. Dec. 8, 2009) ......................................................................................................................13

*Painter v. Graley*, 70 Ohio St.3d 377, 383-84 (1994) .................................................................13

*Paull v. First Unum Life Ins. Co.*, 744 N.Y.S. 2d 95, 96-97 (App. Div. 2002)............................14

*Perl v. Perl*, 172, 512 N.Y.S. 2d 375 (App. Div. 1987) ..............................................................14

*Ruiz v. Bertolotti*, 37 Misc. 2d 1067 (Sup. Ct. 1962), *aff'd* 20 A.D.2d 628, 245 N.Y.S.2d 1003 (App. Div. 1963)..............................................................................................................................18

*Sabetay v. Sterling Drug*, 69 N.Y.2d 329, 335 (1987) ..................................................................9

*Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733, 735 (Tex. 1985).........................................13

*Sanchez v. Orozco*, 178 A.D.2d 391, 578 N.Y.S.2d 145 (App. Div. 1991) ...............................19

*Sanchez v. Thompson*, 252 F.R.D. 136, 139 (E.D.N.Y. 2008) .......................................................2

*Sullivan v. Board of Educ.*, 131 A.D.2d 836, 517 N.Y.S.2d 197 (App. Div. 1987).....................18

*Talmo v. Talmo*, 712 N.Y.S. 2d 833, 836 (Sup. Ct. 2000) ...........................................................18

*Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002) .....................................................3

*Tong v. S.A.C. Capital Mgt.*, LLC, 835 N.Y.S. 881, 889 (Sup. Ct. 2007), *aff'd in part and mod. in part*, 2008  N.Y. App. Div. LEXIS 5490 (N.Y. App. Div. June 19, 2008)...........................13

*United States v. HSBC Bank USA, N.A.*, Doc. No. 3-1, Case No. 1:12-cr-763 (JG)....................15

*Vasquez v. Wood*, 190 Misc. 2d 427 (Sup. Ct. 2001) ..................................................................15

*Weisman v. Weisman*, 108 A.D.2d 853, 485 N.Y.S.2d 570 (App. Div. 1985).............................19

*Wieder v. Skala*, 80 N.Y.2d 628, 637 (1992)................................................................................10

*Wood v. Duff-Gordon*, 222 N.Y. 88 (1917) ...................................................................................11

Andrew Grosso
ANDREW GROSSO & ASSOCIATES
Georgetown Place
1101 Thirtieth Street, NW
Suite 300
Washington, D.C. 20007
(202) 298-6500

Nicholas J. Damadeo
NICHOLAS J. DAMADEO, P.C.
27 West Neck Road
Huntington, New York 11743
(631) 271-7400

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **JOHN CRUZ,** | ) | |
| | ) | |
| Plaintiff | ) | CASE NO. 12-cv-06088 (LDW) (ARL) |
| | ) | |
| v. | ) | |
| | ) | |
| **HSBC BANK USA, N.A.,** | ) | |
| | ) | |
| Defendant | ) | |

## OPPOSITION OF PLAINTIFF JOHN CRUZ TO DEFENDANT'S
## MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Plaintiff John Cruz ("Mr. Cruz"), through his undersigned attorneys, hereby responds to

the Motion of Defendant HSBC Bank USA, N.A. ("HSBC" or the "Bank") to Dismiss Plaintiff's

Amended Complaint (the "complaint" or the "Amd. Cmpl.").[1]

In summary, HSBC attempts to argue facts in *lieu* of the accepting the complaint's

allegations taken in the light most favorable to the Plaintiff—as required on a motion to dismiss;

---

[1] Doc. No. 4.

disregards the terms and conditions of the employment contract between Mr. Cruz and the Bank as pleaded in the complaint; and otherwise seeks to have this Court ignore New York case law pertaining to retaliatory and tortious conduct in the workplace. The Bank's motion must be denied.

In support of this Opposition, Mr. Cruz submits the following:

## MEMORANDUM AND ARGUMENT

### I. THE LEGAL STANDARD

On a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *Sanchez v. Thompson*, 252 F.R.D. 136, 139 (E.D.N.Y. 2008), citing *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). All the Plaintiff needs to do is satisfy "a flexible 'plausibility' standard," amplifying a claim with some allegation of facts that, taken in context, makes the claim plausible. *Sanchez*, 252 F.R.D. at 139, *quoting Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007). Only if the Plaintiff is unable to establish any cause of action, under any legal theory, given the allegations in a compliant may the complaint be dismissed. *Amron v. Morgan Stanley Inv. Advisors, Inc.*, 464 F.3d 338, 343 (2d Cir. 2006).

No heightened fact pleading is required of the Plaintiff, and the Complaint need allege "'only enough facts to state a claim for relief that is plausible on its face.'" *Sanchez*, 252 F.R.D. at 139, *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Only those facts alleged in the Complaint are to be considered, supplemented only by documents attached to or referenced

2

and relied upon in the Complaint, or information otherwise referenced and relied upon in the

Complaint. *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002).

## II. THE FACTS AS PLEADED

The pertinent facts as pleaded in the Amended Complaint are the following, and are

corroborated by the email communications incorporated into Mr. Cruz's complaint as exhibits:

John Cruz is a former Vice President and Senior Business Relationships Manager for

HSBC on Long Island, New York.  He began his employment with the Bank on January 14,

2008[2]; executed an employment contract on January 22, 2008[3]; and was fired on February 17,

2010.[4]  He received his first performance review in January 2009, and his performance was rated

satisfactory.[5]

### A. The Employment Agreement

Incorporated into his employment contract was an "HSBC Certificate of Compliance,"[6]

which included many provisions that required Mr. Cruz to report fraudulent or illegal activity or

conduct to his supervisors and high level officers within the Bank. Among these provisions were

the following[7]:

> 12. I understand that *I am required to report immediately* to the General Counsel
> of my subsidiary (or to such person as the General Counsel shall designate) or to
> the General Counsel of the Corporation, *any conduct or activity* engaged in by
> any employee of the Corporation or one of its agents *which I know or suspect
> involves fraud or criminality* or which may expose the Corporation to liability. . . .

---

[2] Amd. Cmpl. ¶ 9.
[3] Amd. Cmpl. ¶¶ 48, 52.
[4] Amd. Cmpl. ¶ 44.
[5] Amd. Cmpl. ¶ 12.
[6] Amd. Cmpl. ¶¶ 48, 52. A copy of this Certificate of Compliance is included as Exhibit A.
Since it was referenced in the Amended Complaint, it can be considered by the Court on a
motion to dismiss. *See Taylor*, 313 F.3d at 776.
[7] Amd. Cmpl. ¶ 49 (emphasis added).

3

13. I understand that *I am required to report immediately* to the General Counsel of my subsidiary (or to such person as the General Counsel shall designate) or to the General Counsel of the Corporation *any conduct or activity* engaged in by any entity with a creditor-debtor relationship with the Corporation *which I know or suspect involves fraud or criminality* or which may expose the Corporation to liability. . . .

We emphasize that these provision were incorporated into Mr. Cruz's employment contract – they were not merely part of a separate employee's manual or policy manual.

Similarly, the following provision also appeared in this HSBC Certificate, and is therefore also incorporated into the contract[8]:

14. I have read and/or been trained in, understand and *will adhere to the policies and procedures of any business unit I work for as they relate to compliance with the law and apply to my responsibilities.*

One of these "policies and procedures" of the business unit in which Mr. Cruz worked was the Anti-Money Laundering Initiative (the "AML Initiative" or the "Initiative").[9]  This Initiative was incorporated into the HSBC Compliance Certificate and, through this Compliance Certificate, it was incorporated into the employment agreement between John E. Cruz and HSBC Bank.[10]  The Initiative identified several manner and means whereby money laundering is implemented, including the placement of funds into the bank; the layering of funds among various accounts; and the withdrawal of case.  It also placed an obligation upon Mr. Cruz to "report suspicious activity."[11]

---

[8] *Id.*
[9] Amd. Cmpl. ¶ 50.  A copy of this AML Initiative is included as Exhibit B.
[10] *Id.*
[11] Amd. Cmpl. ¶ 51.

**B. The Discovery by Mr. Cruz of the Illegal Activity**

The complaint lays out in detail how Mr. Cruz learned about the ongoing fraudulent activity occurring within HSBC Bank, including falsified internal bank entries and money laundering.[12] Overall, Mr. Cruz uncovered some fifty accounts that were involved in such activity[13], including accounts that were completely phony, such as the Goldberg, the S&S Corporation, and the Pillar, Inc. accounts[14]; and some appearing under names of real businesses, which businesses did not know or acknowledge that they had such accounts.[15] Among named accounts involved in such fraudulent activity were: National Mutual, Inc.; Educational Services & Products, LLC; the ETS Express Corp.; Etravantage FO; JSP Contracting 2 Inc.; Global Worldwide Int'l, Inc.; and Pillar Capital Holdings LLC.

The account that first raised Mr. Cruz's suspicions was that for Goldberg. It was valued over $850 million, but, when he went to visit its offices in Manhattan, he learned that the company had never done business at the listed address. A closer examination of the listed accounts demonstrated that while money was being actively deposited and withdrawn, Mr. Cruz could not tell where the money was coming from or going to.[16]

Mr. Cruz notified his supervisor, Michael Jenkins, of what he had found. Mr. Cruz told him that this was an $800 million account, that he was not going to lose it, and that Cruz should go back to doing his job.[17] Significantly, when Mr. Cruz removed the Goldberg account from

---

[12] Amd. Cmpl. ¶¶ 16-31.
[13] Amd. Cmpl. ¶ 30.
[14] Amd. Cmpl. ¶¶ 16-18, 24-26, 28, 29.
[15] Amd. Cmpl. ¶ 41-42.
[16] Amd. Cmpl. ¶¶ 16-19.
[17] Amd. Cmpl. ¶ 20.

his portfolio, he found that it was re-inserted. He removed it again, and it was re-inserted again. He also reported this to Mr. Jenkins.[18]

After confirming his suspicions with additional research, he approached more senior level Bank officers, these being Patricia Heron, George Matranga, and Ralph Scannella. He was told that yet another Bank official had authorized keeping the account open.[19]

George Matranga is an HSBC Bank Security Officer.[20] Mr. Cruz met with him on July 28, 2009. During that meeting, Matranga told him that the Bank was already investigating some $900 million in suspicious transactions.[21] Quickly thereafter, Michael Jenkins criticized Mr. Cruz's job performance—a sudden contradiction of Mr. Cruz's prior "satisfactory" performance review.[22]

Mr. Cruz contacted Mr. Matranga, wanting to meet again with him and discuss more suspicious activity. Mr. Matranga told him that he was no longer allowed to speak with Mr. Cruz, and that eventually Mr. Cruz would be terminated because he knew too much about the unlawful activities.[23] In a separate conversation with James Young, Vice President and Manager at a branch office of the Bank,[24] Mr. Young acknowledged that Mr. Jenkins was trying to cover up matters to protect himself, including criticizing Mr. Cruz's job performance for this purpose.[25]

Mr. Cruz retained an attorney. Based on his attorney's advice, on October 2, 2010, Mr. Cruz sent an email to his supervisors. In part, this email said, "My attorney has strongly

---

[18] Amd. Cmpl. ¶ 27.
[19] Amd. Cmpl. ¶ 33.
[20] Amd. Cmpl. ¶¶ 8(f), 23.
[21] Amd. Cmpl. ¶ 33.
[22] Amd. Cmpl. ¶ 35.
[23] Amd. Cmpl. ¶ 36.
[24] Amd. Cmpl. ¶ 8(i).
[25] Amd. Cmpl. ¶ 37.

recommended I report these activities to State and Federal authorities immediately. I would appreciate HSBC's input as to how they would like me to proceed."[26]

Amazingly, Mr. Cruz received an email from HSBC's Human Resources department, accusing him of failing to document and properly report the illegal activities he had previously and persistently brought to the attention of Michael Jenkins, James Young, Patricia Heron, Ralph Scannella and George Matranga. Aria Malanga, of HSBC Human Resources, accused him of failing to "provide specific details" to back up his claims; and that his "failure to do so" prevented HSBC from "properly investigating" his claims.[27] Making this accusation yet more incredible is the massive ongoing money laundering then known and approved by the upper echelons of the Bank, as discussed in detail in a Staff Report of the Permanent Subcommittee on Investigations of the United States Senate, dated July 16, 2011, titled: *U.S. Vulnerabilities to Money Laundering, Drugs, and Terrorist Financing: HSBC Case History*,[28] and as confirmed in a conversation between Mr. Cruz and Mr. Matranga.[29]

Ultimately, when it realized that Mr. Cruz was taking home account information (concerning phony and otherwise fraudulent accounts) to provide to law enforcement, HSBC terminated Mr. Cruz under false pretenses[30].

Clearly, the Bank sought to minimize the revelations that would eventually be uncovered by the Senate investigation and the ensuing criminal probe by the U.S. Department of Justice, while maintaining the profits it was generating through its unlawful activities as long as possible. In furtherance of these goals, the Bank sought to force Mr. Cruz to engage in and cover-up its illegal

---

[26] Amd. Cmpl. ¶ 38.
[27] Amd. Cmpl. ¶ 40.
[28] Amd. Cmpl. ¶¶ 13-14.
[29] Amd. Cmpl. ¶ 33.
[30] Amd. Cmpl. ¶¶ 44-45.

activities, as well as refrain from disclosing documents and other information to law enforcement; and, because Mr. Cruz refused to engage in those illegal activities, the Bank terminated Mr. Cruz.

## III. EACH COUNT PROPERLY STATES A CLAIM FOR RELIEF

The Defendant attacks each count individually. In this Opposition, Mr. Cruz addresses HSBC's arguments by grouping his responses, and the counts to which they reply, into three subtopics:

*First:* Counts One and Two, which concern Mr. Cruz's employment agreement with HSBC Bank and which allege that HSBC breached its agreement and breached the covenant of good faith and fair dealing with regard to the agreement;

*Second:* Counts Three and Four, which address HSBC's attempts to silence and then punish Mr. Cruz, alleging coercion and retaliation, regarding his conduct in notifying his supervisors and other Bank officers of ongoing criminal activity and, eventually, notifying law enforcement of the same; and

*Third:* Count Five, which alleges the tort of intentional infliction of emotional distress, and which is related to Counts Three and Four; however, because of the somewhat different nature of the Defendant's attack on this tort, we treat it separately from the earlier counts.

## A. Counts One and Two: Breach of Contract, and Breach of the Covenant of Good Faith and Fair Dealing

Count One alleges that HSBC breached its contract with John Cruz when it terminated his employment for reporting violations of federal criminal laws, such reporting being required by the HSBC Certificate of Compliance. Count Two alleges that HSBC breached the covenant of good faith and fair dealing, in that the Bank retaliated against him and terminated him for attempting to carry out his obligations set forth in the Certificate of Compliance. As discussed above, this Certificate was incorporated into and made a part of the employment agreement

8

between Mr. Cruz and HSBC Bank[31]; thus, its provisions are not mere policies, such as might be found in a company's "corporate policy manual and [a] corporation's accounting code." *See Sabetay v. Sterling Drug*, 69 N.Y.2d 329, 335 (1987).

For our purposes, there are two critical requirements that Mr. Cruz was obligated to fulfill established by the Certificate. The first is that, as a condition of his employment, he was to report "immediately" to an appropriate official of the Bank "any conduct or activity engaged in by any employee" which he knew or suspected involved "fraud or criminality"; and any such conduct "engaged in by any entity with a creditor-debtor relationship" with the Bank.[32] The second is that he "adhere to the policies and procedures of any business unit" for which he worked "as they relate to compliance with the law and apply to [his] responsibilities."[33] *Sabetay*, 69 N.Y.2d at 335.

Among these policies and procedures were the bank's Anti-Money Laundering policies which expressly required that Mr. Cruz "report suspicious activity."[34] We also note that Point 19 of the HSBC Certificate of Compliance provides that "failure to abide by the provisions of . . . the policies and procedures of any business unit [an employee works] for may result in termination of [that employee's] employment." The clear meaning of this clause is that, if an employee *does* engage in conduct so as to abide by the provisions of his business unit, he will *not* be terminated for doing so.[35]

Mr. Cruz fulfilled his contractual obligation—he reported: fraud, false entries made in bank records, money laundering, and his suspicions of all such criminal conduct to his

---

[31] See also Amd. Cmpl. ¶¶ 48, 52.
[32] Amd. Cmpl. ¶ 49.
[33] *Id.*
[34] Amd. Cmpl. ¶¶ 50-51.
[35] Exhibit A.

supervisors. The Bank broke its part of the agreement—it broke its obligation to not fire him if he reported this unlawful activity. Mr. Cruz has thus properly alleged that HSBC Bank breached the terms of its employment contract with Mr. Cruz, and has properly alleged a breach of his employment contract.

In the alternative, Mr. Cruz has alleged a breach of the covenant of good faith and fair dealing, a cause of action expressly recognized by the courts of New York State. *See Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 304-05 (1983). This cause of action has been described by the New York Court of Appeals as follows:

> It is the law that in "every contract there is an implied undertaking on the part of each party that he will not intentionally and purposely do anything to prevent the other party from carrying out the agreement on his part." [Citations omitted.] The idea is simply that when A and B agree that B will do something it is understood that A will not prevent B from doing it. The concept is rooted in notions of common sense and fairness *(see,* Farnsworth, The Law of the Contract § 7.16, at 524 [1982]). "What courts are doing [when an omitted term is implied]", Professor Corbin explains, "whether calling the process 'implication' of promises, or interpreting the requirements of 'good faith', as the current fashion may be, is but a recognition that the parties occasionally have understandings or expectations that were so fundamental that they did not need to negotiate about those expectations" [Citations omitted.]

*Wieder v. Skala,* 80 N.Y.2d 628, 637 (1992).

The provisions of the Bank's Certificate of Compliance and AML policies, quoted above, were parts of Mr. Cruz's employment agreement that he was obligated to carry-out. Thus, there existed – if not an express, then—an implied covenant of good faith and fair dealing that the Bank would do nothing to prevent Mr. Cruz from reporting to his supervisors and other Bank officials the criminal activity that he suspected and observed. By making it, first, difficult, and later impossible for him to fulfill those obligations because of the Bank's retaliation against him while he remained in the work place, and, eventually, by terminating him from the work place, Defendant HSBC violated this covenant.

10

Similarly, the conduct of Mr. Cruz in reporting suspicious activities to his superiors was in furtherance of his direct employment responsibilities, those of administering customer accounts, in that he was required to enable and assist HSBC to fulfill its obligations as a national bank, chartered by the National Bank Act and regulated by the Office of the Comptroller of the Currency.[36] These responsibilities include reporting to the Bank false entries in bank records and other fraudulent conduct.[37] By terminating his employment for the purpose of preventing and punishing him for carrying out these obligations, the Bank again violated the covenant of good faith and fair dealing. *Wood v. Duff-Gordon*, 222 N.Y. 88 (1917).

**B. Counts Two and Three: Retaliation and Coercion**

Counts Two and Three allege the torts of retaliation and coercion. These claims are held to a high standard of proof under New York common law; nonetheless, these legal theories have been cited favorably *in dicta* by the New York Court of Appeals, and, to date, no case has presented a New York court with the unique set of facts presented here: HSBC not only retaliated against Mr. Cruz for reporting unlawful activity, but it sought to coerce him into committing federal crimes—felonies—and then retaliated against him when he refused.

Mr. Cruz alleges that the Bank sought to keep him from reporting false entries, money laundering, and other criminal conduct to federal law enforcement officials, in violation of 18 U.S.C. § 4. This statute requires a person who has actual knowledge of the commission of a felony to report that felony "as soon as possible" to "some judge, or other person in civil . . .

---

[36] Amd. Cmpl. ¶¶ 2, 6, 10, 11.

[37] Amd. Cmpl. ¶ 49; *see* Corporate and Criminal Fraud Accountability Act (otherwise known as the Sarbannes-Oxley Act, or "SOX Act"); *see also* 18 U.S.C. § 1514A (prohibiting retaliation against employees of publicly traded corporations for reporting violations of law to supervisors or to law enforcement). HSBC Bank is part of HSBC Holdings which trades on the New York Stock Exchange under the ticker symbol HBC. It also trades on the London Stock Exchange under the symbol HSBA. Such being the case, it is covered by the SOX Act.

11

authority under the United States." A violation of this statute is itself a federal criminal act, punishable by three years imprisonment.

Examining related case law in the State of New York, we find that the New York Court of Appeals has previously rejected a claim of a tort of abusive discharge. In *Wieder*, 80 N.Y.2d 628, the plaintiff based this tort on "public policy." Nonetheless, the Court went on to find an exception to the at-will employment doctrine, re-instating a cause of action for breach of contract, noting *inter alia* that the failure of Wieder, a lawyer, to comply with the ethical rules of the New York Bar "put him at risk of suspension or debarment." *Id.* at 636-37.

Later, in *Horn v. New York Times*, 100 N.Y.2d 85 (2003) that plaintiff also relied upon "public policy" in asking the same court to recognize the tort of retaliatory discharge. While rejecting the plaintiff's "invitation," the Court noted that the conduct for which Horn, a medical professional, was punished through her alleged retaliatory discharge—refusing to violate the physician-patient privilege of other employees she examined—was not considered to be "a self-policing rule critical to professional regulation." *Id.* at 95.

In contrast to these two cases, Mr. Cruz was punished through retaliation, and then termination, not merely for reporting and threatening to report unlawful conduct on the part of others, *but for refusing to himself commit a crime and putting his liberty in jeopardy*, that is, for refusing to refrain from reporting the felony-crimes he observed to law enforcement, where the failure to report such crimes to federal law enforcement was itself a felony punishable by imprisonment. The torts alleged in Counts Two and Three are not based in mere public policy, but in the criminal law, and no employee may be coerced or punished without remedy when he is pressured by an employer to commit a crime upon penalty of job-related retaliation or termination. *See Horn*, 100 N.Y. 2d at 97-105 (opining favorably for breach of an implied

12

contract) (J. Smith, dissent); *see also Painter v. Graley*, 70 Ohio St.3d 377, 383-84 (1994);

*Medley v. SugarHouse HSP Gaming, L.P.*, 2013 U.S. Dist. LEXIS 39201, at *9-10 (E.D. Pa.

Mar. 21, 2013); *Casissa v. First Republic Bank*, 2010 U.S. Dist. LEXIS 72438, at *5-6 (N.D.

Cal. July 19, 2010); *Bartis v. John Bommarito Oldsmobile-Cadillac, Inc.*, 626 F. Supp. 2d 994,

1000 (E.D. Mo. 2009); *Owens v. Accuscribe Transcription Servs. LLC*, 2009 U.S. Dist. LEXIS

123550, at *56-57 (D.S.C. Dec. 8, 2009); *Emery v. Schneider*, 2009 U.S. Dist. LEXIS 6891, 25-

26 (D.S.D. Jan. 30, 2009); *Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733, 735 (Tex. 1985).

Finally, the tort of coercion as alleged in Count Four is not in the nature of a wrongful

discharge claim, as the relevant tortious conduct alleged therein begin months prior to HSBC's

termination of Mr. Cruz. Thus it does not implicate the employment-at-will doctrine relied upon

by the Defendant. Here, Mr. Cruz was facing forced complicating in illegal activity, under

duress and misrepresentations by the Bank.

"[D]uress is a species of fraud in which compulsion takes the place of deception in

accomplishing an injury." *Candid Prods. V. SFM Media Serv. Corp.*, 381 N.Y.S. 2d 280, 282

(App. Div. 1976). It has been said that New York Courts do not distinguish between duress and

coercion as torts—however, a distinction between the torts of coercion from that of duress exists

in that coercion requires that the defendant act illegally. *Tong v. S.A.C. Capital Mgt.*, LLC, 835

N.Y.S. 881, 889 (Sup. Ct. 2007), *aff'd in part and mod. in part*, 2008  N.Y. App. Div. LEXIS

5490 (N.Y. App. Div. June 19, 2008), *citing Grandonico v. Consortium Communications Intl.*,

566 F. Supp. 1288 (S.D.N.Y. 1983). Although a description of duress—as opposed to

coercion—has been found to include, as an element, some form of actual or threatened violence

or restraint contrary to law, *id.*, here Mr. Cruz has alleged that the Bank inserted and then re-

inserted phony accounts into his portfolio as part of its efforts to force him to engage in criminal

13

activity, and made false representations concerning the fulfillment by him of his job responsibilities, all making it appear as if *he* was the person responsible for the Bank's criminal activity[38] and thus personally and criminally liable. This establishes the illegality of the Bank's conduct, and under such circumstances the Bank's threats may be found to comprise actionable coercion without the overt threat of violence. *E.g., Grandonico*, 566 F. Supp. at 1293 (S.D.N.Y. 1983) (*dicta*); *see also Paull v. First Unum Life Ins. Co.*, 744 N.Y.S. 2d 95, 96-97 (App. Div. 2002) (finding "economic duress" not established where defendant had right to do what it did); *Perl v. Perl*, 172, 512 N.Y.S. 2d 375 (App. Div. 1987) (reversing lower court, and allowing affirmative defense of duress where husband held financial control over assets due to "unequal allocation of power between spouses to terminate a religious marriage").

### C. Count Five: Intentional Infliction of Emotional Distress

Count Five alleges the intentional infliction of emotional distress, a tort well recognized in the State of New York. *McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*, 682 N.Y.S.2d 167 (1998).

### 1. The Seven-Year Statute of Limitations Applies to Count Five

Among the grounds on which Defendant HSBC Bank challenges Mr. Cruz's fifth cause of action is that a one-year statute of limitations applies. However, Mr. Cruz relies upon N.Y. C.P.L.R. 213-B, which provides for a *seven* year statute of limitations in instances where a victim of a crime brings an action against a person who has been convicted of that crime.[39] Here,

---

[38] Amd. Cmpl. ¶¶ 43-44, 69, 73-74.
[39] In pertinent part, C.P.L.R. 213-B reads:

> Notwithstanding any other limitations set forth in this article . . . an action by a crime victim . . . may be commenced to recover damages from a defendant: (1)

14

Mr. Cruz was the victim of HSBC's criminal conduct, which included the active concealment and cover-up of its money-laundering activities.

HSBC is currently the subject of a multi-count Information[40] filed by the U.S. Department of Justice in the United States District Court for the Eastern District of New York, *United States v. HSBC Bank USA, N.A.*, Doc. No. 3-1, Case No. 1:12-cr-763 (JG). Among the allegations in that report is that the Bank:

> [W]as required to establish due diligence, and in some cases enhanced due diligence, policies, procedures and controls that were reasonably designed to detect and report suspicious activity for correspondent accounts it maintained in the United States for non-U.S. persons.

(Information ¶ 7.) The charging language states that the Bank "*knowingly and wilfully*" failed to satisfy these requirements. (Information ¶¶ 18-20; emphasis added.)

C.P.L.R. 213-B is a procedural statute; as such, it is construed liberally. *Cavanaugh v. Watanabe*, 10 Misc. 3d 1043 (Sup. Ct. 2005), *citing* McKinney's Cons. Law of N.Y., Book I, Statutes § 325. Its purpose is to "extend the time a crime victim has to pursue a defendant responsible for the crime" and therefore should be read expansively. *Id.*, *citing Elkins v. Cassarino*, 248 A.D. 2d 35 (2d. Dept. 1998); *Vasquez v. Wood*, 190 Misc. 2d 427 (Sup. Ct. 2001). As explained by the court in *Elkins*:

> C.P.L.R. 213-B does not expressly or impliedly mandate that the "" in question be a conviction in New York State Court, or one defined by the laws of the State of New York. It does not specifically define "crime," does not limit the crimes to which it is applicable, and does not limit the term "crime victim."

---

convicted of a crime which is the subject of such action, for any injury or loss resulting therefrom within seven years of the date of the crime . . . .

[40] Exhibit C. The public record of this filing is subject to judicial notice. *See Taylor*, 313 F.3d at 776.; *Covad Commc'ns. Co. v. Bell Atlantic Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005).

Provided that there is a causal connection between the crime for which the defendant was convicted and the damages sought by the plaintiff, the seven-year statute of limitations of C.P.L.R. 213-B applies. *Cavanaugh*, 10 Misc. 3d 1043. Here, Mr. Cruz was the victim of this portion of HSBC's criminal conduct: he tried to "report suspicious activity," as both he and the Bank were required to do; and HSBC willfully prevented him from doing so by coercion, retaliation, and termination—as charged in the Amended Complaint.

The seven-year statute of limitations applies.

A question might be raised as to whether HSBC has been "convicted of a crime" for the purpose of C.P.L.R. 213-B. Based upon the Deferred Prosecution Agreement ("DPA")[41] executed by HSBC Bank and the U.S. Department of Justice, and its incorporated Statement of Facts[42], the answer is "yes." *See McKinney v. Moore*, 2007 U.S. Dist. LEXIS 29494, at *9 (S.D.N.Y. April 16, 2007) (holding that a deferred prosecution agreement between an individual, who was a pension fund trustee, and the U.S. Attorney's Office fell within the meaning of a "conviction" for purposes of precluding that individual pursuant to ERISA from continuing to serve as a trustee), *citing Harmon v. Teamsters, Chauffeurs & Helpers Local Union 371*, 832 F.2d 976, 980 (7th Cir. 1987) (holding that a deferred prosecution agreement qualified as a conviction for the purpose of barring an individual from continuing as a union official); *Int'l Longshoremen's Ass'n v. United States*, 451 F. Supp 685, 687 (S.D. Ala. 1978) (holding that plea of *nolo contendere* was a conviction for similar purposes); *Nass v. Warehouse Prod. Co.*, 503 F. Supp. 217 (E.D.N.Y. 1980), *aff'd without op.*, 657 F.2d 264 (2d Cir. 1981) (holding that issuance of a certificate of civil disabilities did not take an adjudication of guilt out from the definition of a conviction).

---

[41] Exhibit D; *HSBC Bank USA, N.A.*, Doc. No. 3-2.
[42] Exhibit E; *HSBC Bank USA, N.A.*, Doc. No. 3-3.

16

Under its DPA and incorporated Statement of Facts, HSBC has acknowledged and stipulated to its criminal conduct, accepted responsibility for its actions, and accepted substantial punishment including fines and forfeiture of approximately $1.9 billion dollars and a lengthy period of compliance monitoring totaling a minimum of five years.  Given that the New York courts construe C.P.L.R. 213-B as a procedural statute and give to it a liberal meaning, the DPA into which HSBC agreed satisfies the "conviction" requirement for the application of the seven-year statute of limitations.

2. Count Five Properly Alleges the Tort of the Intentional Infliction of Emotional Distress

Defendant HSBC next attacks Count Five by asserting that the law in New York does not allow the use of the tort of intentional infliction of emotional distress as a substitute for the claim of wrongful discharge, citing *Murphy*, 58 N.Y.2d at 303, and *Ingle v. Glamore Motor Sales, Inc.*, 73 N.Y.2d 183, 189 (1989).  Defendant is right – while completely missing the point of Mr. Cruz's pleading.  Count Five does not mention HSBC's termination of Mr. Cruz's employment, which occurred in February 2010.  Instead, it addresses the outrageous conduct engaged in by the Bank in an effort to break Mr. Cruz to its will and thus prevent him from reporting the unlawful conduct he had observed—conduct alleged to have commenced in July 2009, some six months before the Bank terminated him.  Had the Bank never discharged Mr. Cruz, Count Five would remain well-pleaded.  *Murphy* and *Ingle* are simply not applicable, and the Amended Complaint adequately alleges the intentional infliction of emotional distress to the extent damages for such tort are not adequately addressed in Mr. Cruz's other causes of action. *See McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*, 682 N.Y.S.2d 167 (1998);

17

Finally, Defendant HSBC argues that Mr. Cruz has not alleged the necessary "extreme and outrageous" conduct necessary to sustain the tort. Although the burden a plaintiff must carry to establish this is a high one, it is by no means, as HSBC would have one believe, an impossible one. Many New York courts have allowed this tort to survive on a motion to dismiss and then go to jury. In *Talmo v. Talmo*, 712 N.Y.S. 2d 833, 836 (Sup. Ct. 2000), the court surveyed cases where the allegations had been found "sufficiently outrageous to support a claim of intentional infliction of emotional distress or, at least, raise a question of fact for a jury." Such cases included:

(a) making false charges in a proceeding against a high school principal and spreading false rumors that the principal had also been involved in an affair, had used student funds for his own benefit, and utilized associates to work on his house during school hours, all in order to coerce his resignation, *Sullivan v. Board of Educ.*, 131 A.D.2d 836, 517 N.Y.S.2d 197 (App. Div. 1987);

(b) making hundreds of hang-up telephone calls, *Doe v. Esposito*, 114 A.D.2d 992, 495 N.Y.S.2d 432 (App. Div. 1985);

(c) threatening bodily harm to seller and purchaser if a house were sold to a "colored" purchaser, *Ruiz v. Bertolotti*, 37 Misc. 2d 1067 (Sup. Ct. 1962), *aff'd* 20 A.D.2d 628, 245 N.Y.S.2d 1003 (App. Div. 1963);

(d) yelling and gesturing obscenely at plaintiff, following her to her home, refusing to leave the premises, following her children and family members around and telling plaintiff he knew where the children went to school and when they get out of school, *Bunker v. Testa*, 234 A.D.2d 1004, 652 N.Y.S.2d 181 (App. Div. 1996);

18

(e) a defendant, a psychiatrist, persuading his patient to have a sexual relationship with him for therapeutic benefit and making numerous harassing telephone calls to her after she terminated the relationship, *Sanchez v. Orozco*, 178 A.D.2d 391, 578 N.Y.S.2d 145 (App. Div. 1991);

(f) destroying windows of a house where a woman and children were staying, thereby exposing them to severe cold, and threatening the woman's life by displaying a bullet, *Weisman v. Weisman*, 108 A.D.2d 853, 485 N.Y.S.2d 570 (App. Div. 1985); and

(g) intentionally giving a misdiagnosis of HIV, *Harvey v. Cramer*, 235 A.D.2d 315, 653 N.Y.S.2d 3 (App. Div. 1997).

Here, HSBC sought to coerce Mr. Cruz into committing federal crimes, including money laundering (in aid of terrorism and narcotics trafficking); falsely placed blame on him for failing to properly report such illegal activity—after he repeatedly tried to do so; re-inserted fraudulent and illegal accounts back into his portfolio to force him to engage in illegal conduct and to otherwise take the blame for criminal activity; "wrote him up," giving him a bad performance appraisal for failing to endorse HSBC's criminal activities, clearly threatening his livelihood and his reputation; and ultimately terminated him for simply cooperating with law enforcement. This conduct qualifies as outrageous—more so than the conduct found to satisfy the pleading requirements in *Sullivan, Esposito*, and *Ruiz*, above. It conflicts with HSBC's rendition of its "thoughtful, thorough, and responsive actions" taken in response to Mr. Cruz's reporting of illegal conduct – clearly a factual dispute and not one appropriate for adjudication on a motion to dismiss. For all of these reasons, this issue as to the sufficiency of the "outrageousness" of HSBC's conduct is clearly a fact question properly left to a jury.

19

## CONCLUSION

To the extent that the Defendant has sought to inject and argue facts, such is impermissible on a motion to dismiss. In all respect Mr. Cruz's causes of action are well-pleaded, and his allegations must go to a jury. For the reasons set forth above, the Motion to Dismiss must be denied. Should this Court nonetheless dismiss one or more counts, Mr. Cruz asks that such dismissal be without prejudice to the possibility of amending his complaint.

Respectfully Submitted,

Andrew Grosso, Esq.
ANDREW GROSSO & ASSOCIATES
GEORGETOWN PLACE
1101 THIRTIETH STREET, NW, SUITE 300
WASHINGTON, D.C. 20007
(202) 298-6500 Tel.
(202) 298-5599 Fax
Agrosso@acm.org Email

Nicholas J. Damadeo
NICHOLAS J. DAMADEO, P.C.
27 WEST NECK ROAD
HUNTINGTON, NY 11743
(631) 271-7400 Tel.
(631) 271-7411 Fax
Nick@damadeolaw.com Email

ATTORNEYS FOR PLAINTIFF

Dated: June 5, 2013

20

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of June 2013, I sent the foregoing by *MAIL* to the following:

Alan S. Bloom, Esq.
PAUL HASTINGS LLP
75 East 55th Street, New York 10022
New York, New York 10018

Counsel for Defendant HSBC Bank USA, N.A.

Nicholas J. Damadeo