UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
JOHN CRUZ,

        Plaintiff,

-against-

HSBC BANK, USA, N.A.,

        Defendant.
-----------------------------------------------------------X
APPEARANCES:

ANDREW GROSSO & ASSOCIATES
By: Andrew Grosso, Esq.
Georgetown Place
1101 Thirtieth Street, NW, Suite 300
Washington, D.C. 20007
Attorneys for Plaintiff

NICHOLAS J. DAMADEO, P.C.
By: Nicholas J. Damadeo
27 West Neck Road
Huntington, NY 11743
Attorneys for Plaintiff

PAUL HASTINGS LLP
By: Allan S. Bloom, Esq.
    Stephen P. Sonnenberg, Esq.
    Kelsey G. Van Wart, Esq.
75 East 55th Street
New York, NY 10022
Attorneys for Defendant

MEMORANDUM AND ORDER

CV 12-6088

(Wexler, J.)

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★ MAR 10 2014 ★

LONG ISLAND OFFICE

WEXLER, District Judge:

      Plaintiff brings this complaint based on diversity jurisdiction alleging that his employer terminated him in retaliation for reporting illegal conduct on behalf of the employer. He brings claims for breach of contract, breach of an implied duty of good faith and fair dealing, retaliatory discharge, coercion and intentional infliction of emotional distress. Defendants move to dismiss

under Federal Rules of Civil Procedure ("Fed.R.Civ.P."), Rule 12(b)(6), claiming that there is no basis for these claims under New York law. For the reasons that follow, Defendants' motion to dismiss is granted.

## BACKGROUND

I. Factual Background

The following facts are alleged in Plaintiff's first amended complaint: Plaintiff John Cruz ("Cruz" or "Plaintiff"), currently domiciled in Colorado, was hired by defendant HSBC Bank, U.S.A., N.A. ("HSBC," "Defendant" or "Bank") in January 14, 2008, as a Vice President and Senior Business Relationships Manager for HSBC on Long Island. See First Amended Complaint ("Cmplt."), ¶ 1,2,3,6,9. HSBC has operational headquarters in New York, principal headquarters in Virginia, and various branch offices in the Eastern District of New York. Cmplt., ¶ 2. Cruz worked on various accounts involving business loans, deposit accounts and investments accounts in numerous HSBC offices throughout Long Island and the New York Metro region. Cmplt., ¶ 6, 10. While his home office was in Melville, he primarily worked "on the road." Cmplt., ¶ 11. Cruz' first performance evaluation was "satisfactory" in January 2009.

Plaintiff alleges that before he started working for HSBC, it was aware that some of its branches and employees were involved in illegal laundering of money that was proceeds of criminal activity. This knowledge was described in a Staff Report of the Permanent Subcommittee on Investigations of the United States Senate. Cmplt., ¶ 13. Starting in January 2009, Cruz was assigned an account in the Northport branch, worth over $850,000,000.00. Cmplt., ¶ 16. Cruz tried to determine the identity of the corporations affiliated with the account and identify where money was being deposited from and withdrawn to, without success. Cmplt.,

¶ 17-19. He notified his supervisor that the account should be investigated and reported to the government, but no action was taken. Cmplt., ¶ 20. Further examination of the social security number affiliated with the account linked it to 5,449 other accounts, some of which were clearly fraudulent. Cmplt., ¶ 21. Cruz again reported his findings to his superiors and nothing was done. Cmplt., ¶ 21-23.

Cruz then investigated other accounts and identified fifty other potentially fraudulent or phony accounts. Cmplt., ¶ 24-31. In July 2009, Cruz sought to formally report his findings, first to one his superiors he had approached earlier, Michael Jenkins ("Jenkins"), and received no response. Another superior suggested he meet with George Matranga ("Matranga") of HSBC Security, which he did. Cmplt., ¶ 32. Matranga informed Cruz that there was an ongoing investigation, and offered a meeting with another Senior Vice President in lieu of his requests to Jenkins. Cmplt., ¶ 34. At about that time, Jenkins formally criticized Cruz for poor job performance. Cmplt., ¶ 35.

Cruz requested another meeting with Matranga, but was told by Matranga that he was not allowed to speak with Cruz, and that Cruz would be terminated for what he knew. Cmplt., ¶ 36-37.

Thereafter, Cruz retained an attorney, who advised that Cruz notify his superiors that he was going to bring the information he had to regulatory and law enforcement agencies, which Cruz did by email dated October 2, 2009. Cmplt., ¶ 38, Ex. B. A representative of Human Resources responded, summarizing Cruz' complaint, outlining the investigation that was done, and requesting that Cruz provide specifics when making such allegations. Cmplt., ¶ 40. Cruz alleges this response was unknowingly false since HSBC knew Cruz had already reported his

concerns unsuccessfully, and that HSBC had the same access to details that Cruz did. Cmplt., ¶ 40.

Cruz continued to document unlawful and suspicious accounts, which he communicated to Matranga. Cmplt., ¶ 41-42. In January 2010, Cruz received an email requesting information about two accounts. Six months prior, he had reported the accounts as suspicious and fraudulent, and was told to stay away from them. Following the email, his superior Jenkins filed a Corrective Action complaint against him for not doing his duties. Cmplt., ¶ 43, Exs. H & I. On February 17, 2010, Cruz was terminated. Cmplt., ¶ 44.

## DISCUSSION

I. Standards on Motions to Dismiss

In considering a motion to dismiss made pursuant to Rule 12(b)(6), the court must accept the factual allegations in the complaints as true, and draw all reasonable inferences in favor of plaintiffs. Bold Electric, Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995). In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court rejected the standard set forth in Conley v. Gibson, 355 U.S. 41 (1957), that a complaint should not be dismissed, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," id. at 45-46. The Supreme Court discarded the "no set of facts" language in favor of the requirement that plaintiff plead enough facts "to state a claim for relief that is plausible on its face." Twombly, 550 U.S. at 570; see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). Although heightened factual pleading is not the new standard, Twombly holds that a "formulaic recitation of cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1959. Further, a

pleading that does nothing more than recite bare legal conclusions is insufficient to "unlock the doors of discovery." Iqbal, 129 S. Ct. at 1950.

II. Disposition of the Motion

   A. Claims for Breach of Contract and the Covenant Good Faith and Fair Dealing

New York law has long held that an individual employed for an indefinite period of time is presumed to be at-will, and the employment can be terminated at any time by either party. Sabetay v. Sterling Drug, Inc., 69 N.Y.2d 329, 334, 514 N.Y.S.2d 209, 211, 506 N.E.2d 919, 920–21 (1987), citing Martin v. New York Life Ins. Co., 148 N.Y. 117, 121; Murphy v. American Home Prods. Corp., 58 N.Y.2d 293, 301, 461 N.Y.S.2d 232, 237, 448 N.E.2d 86, 91 (1983); Gmora v. State Farm Mut. Auto. Ins. Co., 709 F.Supp. 337, 338 (E.D.N.Y. 1989) (citations omitted). As stated by the New York Court of Appeals, "absent a constitutionally impermissible purpose, a statutory prescription, or an express limitation in the individual contract of employment, an employer's right at any time to terminate an employment at will remains unimpaired." Murphy, 58 N.Y.2d at 304-305. The Court noted then that any change to this public policy should be addressed by the legislature. Id., at 301; 302. This a sentiment was repeatedly reaffirmed by the Court of Appeals. See Sabetay, 69 N.Y.2d at 336-337; Horn v. New York Times, 100 N.Y.2d 85, 92, 79 N.E.2d 753 (2003).

As the language in Murphy makes clear, New York law does recognize a claim for termination of an employee at-will if there is an express limitation on an employer's ability to terminate an employee. The Court of Appeals examined this question in Weiner v. McGraw-Hill, Inc. 57 N.Y.2d 458, 460, 443 N.E.2d 441 (1982). There, the plaintiff signed an employment application, which was subsequently signed as approved by two members of the

defendant employer's staff. The application referenced the McGraw-Hill handbook on personnel policies stating that the company "will resort to dismissal for just and sufficient cause only," or if the "welfare of the company" warrants dismissal. Id., at 460.

The Court of Appeals found since Plaintiff been induced by this policy that he would not be dismissed without cause, and relied on it in taking employment with McGraw-Hill, and had in fact enforced it when dismissing his own subordinates while employed there, there was sufficient evidence of a contract expressly limiting the employer's ability to terminate an employee. Thus, plaintiff's breach of contract claim survived the motion to dismiss.[1] Id., at 465-465.

Subsequent attempts to create a breach of contract claim from company manuals and policies have been circumscribed to cases where there is an express limitation on the employer's unfettered right to terminate at will. See Murphy v. American Home Prods. Corp., 58 NY2d 293, 305 (plaintiff's reference to internal policies that required disclosure of accounting improprieties do not contain an express limitation on an employer's right to discharge and do not create a contract claim); Sabetay, 69 N.Y.2d at 336-337 (employment application and company policies suggest standards of performance for employees and do not create an express limitation on the employer's right to discharge).

Here, Cruz argues that he effectively had a employment contract with Defendants through operation of the Certificate of Compliance ("Certificate"), which he signed on January 22, 2008 upon the initiation of his employment with HSBC, and the HSBC Anti-Money laundering Initiative ("AML Initiative"), which was incorporated into the Certificate. Plaintiff's

---

[1] This case only addressed Weiner's breach of contract claim. The other claims, sounding in tort, were dismissed with no appeal taken. Id., at 462, n.2.

Memorandum in Opposition ("Mem. in Opp."), 8-11; Exs. A & B.[2] This Certificate contains the handwritten name of Cruz's immediate supervisor, James F. Young. The Certificate obligates Cruz to report to the General Counsel any "fraud or criminality," or "violations of the Statement of Business Principles and Code of Ethics," which is an HSBC handbook. See Mem. In Opp., Ex. A: Certificate of Compliance, at 1, 3. Similarly, the AML Initiative, which by its terms seeks to block the flow of illicit funds through financial institutions, requires that an HSBC employee "report suspicious activity." Cmplt., ¶ 50-51; Mem. in Opp., Ex. B.

Cruz argues that these obligations to report constitute an employment agreement that was breached by Defendants when they terminated him for doing exactly what they wanted him to do – namely, report fraud. Unfortunately, though, New York law does not create a claim for breach of contract on these facts.

It is clear from the case law cited above that in order for Plaintiff to state a claim for a breach of contract, there must be an express limitation on the Defendant's otherwise unfettered right to terminate its employees at will. See Weiner, 57 N.Y.2d 458, 465. Plaintiff cites the Certificate as creating an obligation on him, but no where does he point to language creating an "express limitation" on Defendant. In Weiner, the Court's holding rested on language in the employer's handbook that it would terminate an employee where there was "sufficient and just cause." There is no similar language or obligation binding the Defendant employers here. See also Murphy, 58 NY2d 293, 305; Sabetay, 69 N.Y.2d at 336-337; Gmora v. State Farm Mutual

---

[2]Plaintiff has attached the Certificate and AML Initiative to his Mem in Opp. As documents referenced to in the complaint, the Court is permitted to consider them in connection with this motion to dismiss. See Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir.1999), overruled in part on other grounds by Gonzaga Univ. v. Doe, 536 U.S. 273 (2002).

Automobile Ins. Co., 709 F.Supp. 337, 340-341 (E.D.N.Y. 1989) (breach of contract claim dismissed where corporate manuals and policy statements reflect general corporate policies of rehabilitating rather then dismissing employees, but do not contain an express limitation of the employer's right to terminate at will). As a result, Defendants' motion to dismiss Plaintiff's breach of contract claim is granted.

The New York Court of Appeals has also recognized that in very limited instances, there exists an implied duty of good faith on the part of the employer which limits its ability to terminate an employee. In Wieder v. Skala, 80 N.Y.2d 628 (1992), the Court addressed the question of whether an attorney could bring a claim for being terminated by his employer law firm in retaliation for insisting that the partners of the firm comply with the Code of Professional Responsibility and report the misconduct of another associate employed by the firm.

First, the Court noted that plaintiff was unable to point to an express limitation on the employer's right to terminate an at-will employee, as found in Weiner, and discussed above. Wieder, 80 N.Y.2d at 635. Noting its prior holdings that no such obligation could be implied in an employment contract, the Court acknowledged that a different analysis was warranted to determine in there was an implied-in-law duty in the case of an attorney and a law firm. Id.

The Court found that such a duty was implied since the plaintiff attorney, and the members of the law firm that employed him, were obligated by the Code of Professional Responsibility and its reporting requirements. As a result, there is an implied understanding "so fundamental to the relationship" and the purpose of the attorney's employment, that both the associate and firm will conduct themselves according to the disciplinary code, and compliance with the Code will not be frustrated. Id., at 636. Finding that the "unique characteristics of the

legal profession in respect to this core Disciplinary Rule make the relationship of an associate to a law firm employer intrinsically different from that of the financial managers to the corporate employers in Murphy and Sabetay," (id., at 637), the Court permitted the claim for breach of an implied duty to proceed.

Subsequent attempts to extend the holding in Wieder to other professions have failed. See Horn v New York Times, 100 N.Y.2d 85, 760 N.Y.S.2d 378 (2003) (Weider exception does not apply to a medical doctor employed by a nonmedical employer, where her job responsibilities were to further corporate management, and her professional obligations were not central to her conduct of her practice on her employer's behalf); Sullivan v Harnisch, 19 N.Y.3d 259, 264, 946 N.Y.S.2d 540 (2012) (the Weider exception does not apply to a compliance officer who is not part of a self-regulated profession, and whose ethical obligations are not "at the core and, indeed, the only purpose" of his employment).

The facts as alleged by Plaintiff do not support applying the very limited Weider exception here. While Plaintiff was obligated by the Certificate and the AML Initiative to report suspicious or fraudulent behavior, such obligations do not rise to the level of those underpinning the Court's holding in Weider -- that such ethical obligations are at the core of Cruz' employment. Furthermore, since the Court of Appeals did not find the professional obligations of a medical doctor to warrant an extension of Weider, this Court declines to do so as well on these facts. Defendant's motion to dismiss Plaintiff's breach of implied duty of good faith and fair dealing is granted.

B. Retaliatory Discharge Claim

The essence of Plaintiff's complaint is that he was wrongfully discharged in retaliation

legal profession in respect to this core Disciplinary Rule make the relationship of an associate to a law firm employer intrinsically different from that of the financial managers to the corporate employers in Murphy and Sabetay," (id., at 637), the Court permitted the claim for breach of an implied duty to proceed.

Subsequent attempts to extend the holding in Wieder to other professions have failed. See Horn v New York Times, 100 N.Y.2d 85, 760 N.Y.S.2d 378 (2003) (Weider exception does not apply to a medical doctor employed by a nonmedical employer, where her job responsibilities were to further corporate management, and her professional obligations were not central to her conduct of her practice on her employer's behalf); Sullivan v Harnisch, 19 N.Y.3d 259, 264, 946 N.Y.S.2d 540 (2012) (the Weider exception does not apply to a compliance officer who is not part of a self-regulated profession, and whose ethical obligations are not "at the core and, indeed, the only purpose" of his employment).

The facts as alleged by Plaintiff do not support applying the very limited Weider exception here. While Plaintiff was obligated by the Certificate and the AML Initiative to report suspicious or fraudulent behavior, such obligations do not rise to the level of those underpinning the Court's holding in Weider -- that such ethical obligations are at the core of Cruz' employment. Furthermore, since the Court of Appeals did not find the professional obligations of a medical doctor to warrant an extension of Weider, this Court declines to do so as well on these facts. Defendant's motion to dismiss Plaintiff's breach of implied duty of good faith and fair dealing is granted.

B. Retaliatory Discharge Claim

The essence of Plaintiff's complaint is that he was wrongfully discharged in retaliation

for his discovering, pursing and reporting fraud concerning certain accounts were being held by HSBC. Unfortunately for Plaintiff, as frustrating as it may be, New York does not recognize a claim for wrongful discharge of an at-will employee. Sullivan, 19 N.Y.3d 259, 261, 969 N.E.2d 759 (2012) ("[w]e held in Murphy v American Home Prods. Corp., 58 NY2d 293 (1983), and have several times reaffirmed, that New York common law does not recognize a cause of action for the wrongful discharge of an at-will employee. We decline in this case to make an exception to that rule for the compliance officer of a hedge fund."). Since no such claim is recognized under New York law, Defendants' motion to dismiss the retaliatory discharge claim is granted, and the claim is dismissed.

Plaintiff acknowledges that wrongful discharge is disfavored in New York, yet argues that his claim should survive since he was fired because he refused to participate in criminal behavior, as opposed to merely not following professional guidelines. Specifically, Plaintiff claims Defendant retaliated because he would not violate 18 U.S.C. § 4, which requires anyone with knowledge of a felony report it to the authorities. See Mem. In Opp., at 11-12. Yet, Plaintiff is unable to point to any case law from New York supporting this position. Id., at 11-13. While the Court is sympathetic to Plaintiff's frustration in having no recourse for his wrongful termination, the Court is compelled to follow New York precedent and deny the claim. As so stated by the Court of Appeals several times, any change to such a firmly established principal of at-will employment should come from the Legislature. Murphy, 58 N.Y.2d at 301-301; Sabetay, 69 N.Y.2d at 336-337; Horn v New York Times, 100 N.Y.2d at 92.

C. Coercion

Count IV of Plaintiff's complaint alleges that Defendant engaged in the "tort of unlawful

-10-

coercive conduct" by coercing him to violate 18 U.S.C. § 4, noted above, and aiding and abetting the Bank in committing felonies in violation of 18 U.S.C. §§ 1005, 1856 & 1857, and 18 U.S.C. § 2. Plaintiff alleges damages in the form of his salary, commission and other employment benefits, and seeks compensatory and punitive damages.

Defendant claims that the "tort of unlawful coercive conduct" does not exist in New York law, and that this claim is actually a tort claim duplicative of the retaliatory discharge claim that is impermissible under New York law. Defendant quotes the Court of Appeals stating, after Murphy, that "[i]n holding that there is no cause of action in tort for abusive or wrongful discharge of an at-will employee, we declined to allow the use of substitute nomenclature or causes, such as a prima facie tort or intentional infliction of emotional distress, to bootstrap the threshold deficiency in a wrongful discharge claim." Ingle v Glamore Motor Sales, 73 N.Y.2d 183, 188, 538 N.Y.S.2d 771 (1989) (citations omitted). See Defendant's Memorandum in Support ("Def. Mem."), at 8.

Plaintiff attempts to salvage its claim by arguing that the coercion alleged is NOT the same as the wrongful discharge claim, since the coercive conduct started before the termination and therefore encompasses conduct and damages beyond the termination. Defendant rebuts that by pointing out that the caselaw cited by Plaintiff is in the context of coercion (and duress) alleged as defenses to a contract. Def. Mem., at 6.

The Court agrees that Plaintiff's claim for the tort of unlawful coercive conduct is merely an attempt to rename a claim that is essentially one for wrongful discharge. Such attempts are not permissible under New York law. See Ingle, at 188; see also Murphy, 58 N.Y.2d at 303 (plaintiff cannot subvert the rule against a claim for abusive or wrongful discharge by recasting

another tort)(citations omitted). Therefore, Defendant's motion to dismiss is granted as to Plaintiff's tort for unlawful coercive conduct.

D. <u>Intentional Infliction of Emotional Distress</u>

Plaintiff alleges that HSBC engaged in extreme and outrageous conduct by forcing him to choose between his livelihood or violating the law, and that as a result, he suffered emotion distress that forced him to seek the attention of a physician, and ultimately required medication and a psychiatric evaluation. Cmplt., ¶ 77-79.

Plaintiff acknowledges that this claim, first filed in December 2012, is beyond the typical one-year statute of limitations for such claims (New York C.P.L.R. § 215(3)), but argues that the seven-year statute of limitations of C.P.L.R. 213-B, applies here. Mem. in Opp., at 14-17. That section of the CPLR permits a crime victim to bring an action for damages against a defendant convicted of a crime within seven years of the date of the crime. C.P.L.R. § 213-b; Mem. in Opp., at 14. In support thereof, Plaintiff asserts that HSBC is subject to a multi-count information filed by the Department of Justice in the Eastern District of New York dated December 11, 2012 concerning the detection and reporting of various suspicious bank accounts it held, and as a party to a Deferred Prosecution Agreement ("DPA") and its Statement of Facts, HSBC stipulated to certain criminal conduct that satisfies the conviction component of C.P.L.R. § 213-b. <u>See</u> Mem. in Opp., at 14-17; Ex. C, D & E.[3] Plaintiff argues that he is a victim of Defendant's crimes and therefore should benefit from the seven-year statute of limitation.

The Court notes that even if the seven-year statute did apply, and even if Plaintiff could

---

[3]Plaintiff requests that the Court take judicial notice of these documents, filed in <u>United States v. HSBC Bank USA, NA</u>, 12-CR-763 (JG).

claim to be a victim of Defendant's crimes to make the claim timely, such a claim requires that the conduct in alleged "be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Medcalf v. Walsh, 938 F.Supp.2d 478, 488 (S.D.N.Y. 2013) citing Murphy, 58 N.Y.2d at 303, 461 N.Y.S.2d 232, 448 N.E.2d 86 (other citations omitted). Moreover, this tort is disfavored in New York, and only the most egregious conduct establishes such a claim. See Medcalf, 938 F.Supp.2d at 488-489, citing Hogan v. J.P. Morgan Chase Bank, 2008 WL 4185875, at *4 (E.D.N.Y. 2008) and Durant v. A.C.S. State & Local Solutions Inc., 460 F.Supp.2d 492, 499 (S.D.N.Y.2006) (omitting string cite outlining cases); Semper v. New York Methodist Hosp., 786 F.Supp.2d 566, 586 (E.D.N.Y. 2011) (noting "the bar [on this claim] is extremely high and '[t]his highly disfavored cause of action is almost never successful.'")(citations omitted). So too here, the Court finds that Plaintiff's allegations, even if timely, do not rise to a level of extreme and outrageous conduct to support a claim for the intentional infliction of emotional distress. Id., at 489; see also Pell v. Pall Corp., WL 2445217, *3 (E.D.N.Y. 2007).

The Court further notes that this claim is in essence another attempt by Plaintiff to recast a tort where one for wrongful discharge cannot lie. Other courts have recognized that claims for the intentional infliction of emotional distress are particularly difficult in employment cases, where the plaintiff may attempt to recast his claim for wrongful discharge. Semper, 786 F.Supp.2d at 587; Murphy, 58 N.Y.2d at 303 (citations omitted) ("in light of our holding above that there is now no cause of action in tort in New York for abusive or wrongful discharge of an at-will employee, plaintiff should not be allowed to evade that conclusion or to subvert the

traditional at-will contract rule by casting his cause of action in terms of a tort of intentional infliction of emotional distress."). Since this claim does not rest on sufficiently outrageous conduct, and because it is an attempt to revive an invalid claim for wrongful discharge, Defendant's motion to dismiss Plaintiff's claim for the intentional inflection of emotional distress is granted.

## CONCLUSION

For the reasons stated above, the Court hereby grants Defendants' motion to dismiss Plaintiff's complaint in its entirety. The Clerk of the Court is hereby directed to close this case.

SO ORDERED.

s/ Leonard D. Wexler
_____
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
March 10, 2014